IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TAYLOR RICHTER, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 18-CV-50360 |
| LG CHEM, LTD., | ) ) | Judge John J. Tharp, Jr. |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

There is a growing body of evidence that vaping poses many health risks.[1] This case, however, involves an injury unrelated to the inhalation of aerosolized chemicals into the body. In this case, the alleged injury occurred when plaintiff Tyler Richter had to *stop* vaping because the batteries in his e-cigarette died. The batteries that Mr. Richter purchased to use in his vaporizer did not just stop working—they caught fire, burning his left leg. Mr. Richter brought suit against the ostensible manufacturer of the batteries, LG Chem, LTD. ("LG Chem"). Pursuant to Federal Rule of Procedure 12(b)(2), LG Chem moved to dismiss the amended complaint for lack of personal jurisdiction. For the reasons set forth below, LG Chem's motion to dismiss is granted.

## BACKGROUND

In September 2016, Mr. Richter purchased two rechargeable batteries for his Sigelei vape, a type of electronic cigarette, from No Leaf Vapor in Algonquin, Illinois. Am. Compl. ECF No.

---

[1] *See, e.g., Outbreak of Lung Injury Associated with the Use of E-Cigarette, or Vaping, Products,* Centers for Disease Control and Prevention (Feb. 2, 2020), https://www.cdc.gov/tobacco/basic_information/e-cigarettes/severe-lung-disease.html.

4.[2] The batteries—ostensibly LG Chem model LG HG2 18650s—are at the center of this suit.[3] For the next nine months, Mr. Richter used the batteries with no issues. On July 1, 2017, the batteries ran out of power as he was driving home. When he arrived home, Mr. Richter removed the batteries and placed them in his pocket. When Mr. Richter got out of his car and stood up, "one of the batteries rolled out of his pant leg and onto the ground and was glowing red and extremely hot and had a flame coming out of one of the ends."

Mr. Richter, who suffered burns on his left leg and incurred related medical bills, brought suit against LG Chem to recover for his injuries, asserting negligence and strict products liability theories. LG Chem—a Korean corporation with its principal place of business in Seoul, South Korea—filed a motion to dismiss for lack of personal jurisdiction. *See* Def.'s Mot. Dismiss 2, ECF No. 9. The Court permitted the parties to conduct jurisdictional discovery, after which Mr. Richter responded asserting that Midwest Goods had purchased LG Chem HG2 batteries from authorized distributors in China. Along with his response brief, Mr. Richter provided an affidavit from Thomas Murphy, a Human Resources and Business Consultant for Midwest Goods, a wholesale distributor of vaping and e-cigarette products. Aff. Thomas Murphy 1, ECF No. 51-4. Mr. Murphy stated that Midwest Goods had acquired LG HG2 18650 batteries from distributors affiliated with LG Chem—ECIG Fiend Co., LTD. ("ECIG Fiend") and Shenzhen IME Technology Co., LTD.

---

[2] The factual background—undisputed except where noted—is drawn from Mr. Richter's amended complaint. Unhelpfully, the amended complaint repeats paragraph numbers in each of its two counts, making citation to a specific paragraph in the pleading problematic.

[3] LG Chem notes that Mr. Richter has not established that the batteries were manufactured by LG Chem, but LG Chem does not dispute the issue directly. Further, as discussed below, the Court finds that it lacks personal jurisdiction even assuming that the batteries were manufactured by LG Chem; therefore, the issue is not material to the present motion.

("Shenzen IME")—and sold them to retail stores, including No Leaf Vapor. *Id.* at 2. LG Chem's reply brief included a responsive affidavit from Joon Young Shin, a member of LG Chem's Customer Service Team, stating that LG Chem had no relationship with Midwest Goods, ECIG Fiend, or Shenzen IME. Shin Reply Decl. 2, ECF No. 60-1. After briefing, the Court determined that an evidentiary hearing was necessary to determine the relationship between LG Chem and these distributors.

At the evidentiary hearing, held by videoconference, LG Chem and Mr. Richter each presented a witness: LG Chem called Kung Tek Oh, a sales and marketing professional at LG Chem; Mr. Richter called Mr. Murphy of Midwest Goods. Evidentiary Hr'g Tr. 2-3, ECF No. 89. Based on the witness testimony and exhibits presented by the parties, the Court finds the following facts. LG Chem began selling LG HG2 18650 batteries in 2016 for use in power tools and vacuum cleaners. *Id.* at 10.[4] As a rule, LG Chem does not sell the LG HG2 18650 batteries in individual packages for consumer sales. *Id.* at 18. When LG Chem is approached by a potential new customer, LG Chem inquires about the nature of the customer's product and determines whether that product is a good fit for LG Chem's batteries. *Id.* at 15, 38-40. If the product is not a good fit, no transaction is consummated and LG Chem does not, alternatively, then refer the potential customer to an existing customer of LG Chem's to purchase the batteries that way. *Id.* More generally, LG Chem does not refer potential customers to other companies to purchase LG Chem products. *Id.* at 16. If LG Chem determines that the potential customer's product is a good fit, LG Chem will initiate a

---

[4] Mr. Oh began working for LG Chem in 2011, though he did not begin working on LG HG2 18650 battery accounts until 2017. Nonetheless, the Court finds that he adequately explained the basis of his personal knowledge regarding the date that LG Chem began selling the LG HG2 18650 batteries. *See* Evidentiary Hr'g Tr. 19, ECF No. 89. Plaintiff's assertion that Mr. Oh had no knowledge regarding the sales of LG Chem's HG2 batteries prior to 2017 is not accurate.

business relationship and discuss the terms of sale. *Id.* at 15, 39-40. When LG Chem makes a sale, it provides several documents to parties involved in the transaction. To the customers, LG Chem provides a "product specifications" document that indicates how the product should be used. *Id.* at 17. For the LG HG2 18650 batteries, this document indicates that the batteries should only be used in battery packs together with protection circuitry. The specifications prohibit the use of the batteries in e-cigarettes. *Id.* at 17-18.[5] To the shipping forwarders, LG Chem provides a material safety data sheet and a certificate of compliance. *Id.* at 46-47. LG Chem will also provide the material safety data sheet to customers upon request. *Id.*

In the ordinary course of business, LG Chem keeps a database identifying its customers and tracking the sales made to each customer (the "customer database"). *Id.* at 10-11. The database does not, however, contain information about potential customers that expressed interest in LG Chem products where no sale was completed. *Id.* at 30. Once entered, information about a customer remains in the customer database permanently. *Id.* at 12.[6] When Mr. Oh checked the customer database roughly a week before the evidentiary hearing, no company by the name of Midwest Goods, Midwest Distribution, No Leaf Vapor, ECIG Fiend, or Shenzen IME appeared in the database. *Id.* at 12-13. In the relevant time period, LG Chem worked with only one distributor, a South Korean company named Gims. *Id.* at 29-30. LG Chem had no distribution system for its batteries in the United States. *Id.* at 41. LG Chem sold LG HG2 18650 batteries directly to two

---

[5] Plaintiff's objection to this testimony as hearsay was overruled; the product specifications provide directions and instructions, not assertions of fact offered for their truth.

[6] There are 20 or 30 sales professionals responsible for maintaining the database, of which Mr. Oh is one. Each sales professional can input or edit information. Evidentiary Hr'g Tr. 2-3, ECF No. 89.

manufacturing companies in Illinois—AllCell Technologies, LLC ("AllCell Technologies") and Inventus Power. *Id.* at 35-37. There is no evidence linking the products sold to AllCell Technologies or Inventus Power to Midwest Goods or No Leaf Vapor.

Midwest Goods, located in Bensenville, Illinois, began operating as a wholesale distributor of e-cigarettes and vaping products in 2013. *Id.* at 50. Based on records kept in the ordinary course of business, Midwest Goods purchased batteries—referred to as "LG HG2" batteries in the invoices—from ECIG Fiend and Shenzen IME in 2016 and 2017. *Id.* at 53-55.[7] During this period, No Leaf Vapor was a customer of Midwest Goods. *Id.* at 57. Along with its purchases of batteries, Midwest Goods received, and stored in the ordinary course of business, material safety data sheets and certificates of compliance that bear LG Chem's logo and resemble the documents that LG Chem distributes to shipping forwarders as part of its sales process. *Id.* at 57-63.[8] Although Mr. Murphy testified that it was Midwest Goods' policy to purchase only from authorized distributors, he did not provide evidence that ECIG Fiend or Shenzen IME were authorized distributors of LG batteries. *Id.* at 66. In his investigation of Midwest Goods' records, Mr. Murphy did not locate any documents indicating such authorization. *Id.* at 72. In stating otherwise in his affidavit, Mr. Murphy relied on statements by other employees at Midwest Goods and his own inferences drawn from the material safety data sheets and certificates of compliance. *Id.* at 65-66. In short, Plaintiff Richter adduced no competent evidence establishing any relationship between LG Chem and the

---

[7] Mr. Murphy began working for Midwest Goods in April 2018 but has become familiar with these facts that pre-date his tenure through his job duties, which require reviewing invoices kept in the ordinary course of business.

[8] LG Chem disputes the authenticity of these documents. The Court need not decide the issue, however, because even assuming that the documents are authentic, they do not support a finding that either ECIG Fiend or Shenzen IME were authorized distributors of LG Chem batteries.

5

companies from which Midwest Goods purchased the HG2 18650 batteries. To the contrary, the evidence adduced during the hearing supports a finding that there was no commercial relationship between LG Chem and ECIG Fiend or Shenzen IME.

## DISCUSSION

When a defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of proof. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). "The precise nature of the plaintiff's burden depends upon whether an evidentiary hearing has been held." *Id.* Where, as here, the Court holds an evidentiary hearing to resolve disputes of material fact, "the plaintiff must establish jurisdiction by a preponderance of the evidence." *Id. See also Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002) ("If personal jurisdiction is challenged under Rule 12(b)(2), the court must decide whether any material facts are in dispute. If so, it must hold an evidentiary hearing to resolve them, at which point the party asserting personal jurisdiction must prove what it alleged.").

A federal court sitting in diversity evaluates the existence of personal jurisdiction with reference to the law of the state in which it sits—for this Court, Illinois. *See id.* ("A federal court sitting in diversity must rely on the law of personal jurisdiction that governs the courts of general jurisdiction in the state where the court is sitting."). The Illinois long-arm statute provides that "[a] court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). And the Seventh Circuit has held that "the Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); therefore, the operative question is—ultimately—one of federal law: "whether the exercise of personal jurisdiction over the defendant[ ] 'comports with the limits

6

imposed by federal due process.'" *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 393 (7th Cir. 2020) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)).

In a case like this one—where the jurisdictional issue concerns an out-of-state defendant— the "key question" under the Due Process Clause is "whether the defendant has sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Crucial to the minimum contacts analysis is a showing that the defendant 'should reasonably anticipate being haled into court [in the forum State], because the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities' there." *Hyatt Int'l Corp*, 302 F.3d at 716 (alterations in original) (internal citations omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 474 (1985)).

This inquiry has given rise to "two categories of personal jurisdiction"—general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014). "General jurisdiction is all-purpose; it permits a defendant to be sued in a forum for any claim, regardless of whether the claim has any connection to the forum state." *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019). "For a court to exercise general jurisdiction over an out-of-state defendant, the defendant's connection to the forum state must be 'so continuous and systematic as to render [it] essentially at home' there." *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575 (7th Cir. 2020) (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Mr. Richter does not explicitly put forward a theory of general jurisdiction,[9] but he does reference LG Chem's sale of batteries to Illinois

---

[9] And his post-hearing brief argues only specific personal jurisdiction.

7

entities—All Cell Technologies and Inventus Power—that have no connection to the distribution chain at issue in this case. To the extent that Mr. Richter references LG Chem's limited sales to these Illinois entities to invoke general jurisdiction, the effort falls well short. *See Tamburo*, 601 F.3d at 701-02 ("These sporadic contacts with Illinois do not approach the level of 'continuous and systematic' contacts necessary to establish general personal jurisdiction.")

The other category of personal jurisdiction—and the one primarily at issue in this case—is specific jurisdiction. "To support an exercise of specific personal jurisdiction, the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction." *Id.* at 702. The Seventh Circuit has identified "three essential requirements" of specific jurisdiction. *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012); *see also Lexington Ins. Co.*, 938 F.3d at 878 (same). First, "the defendant must have purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state." *Felland*, 682 F.3d at 673. Second, "the alleged injury must have arisen from the defendant's forum-related activities." *Id.* Third, "the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Id.*

Applying these jurisdictional prerequisites to the present facts, no action by LG Chem fairly subjects it to personal jurisdiction in this case. This follows from two interrelated findings. First, although Mr. Richter was injured by an LG Chem product (assumed, for purposes of this motion), no evidence indicates that LG Chem has purposefully directed its marketing of HG2 batteries to Illinois consumers (thus failing to satisfy the first requirement). And second, even if the Court concluded that LG Chem purposefully availed itself of the Illinois market, no evidence indicates that Mr. Richter's claims arose from those forum-related activities (thus failing to satisfy the second requirement). In sum, the Court finds that it cannot exercise personal jurisdiction

8

because LG Chem's "contacts" with Illinois do not "directly relate to the challenged conduct or transaction." *Tamburo*, 601 F.3d at 702.

As to the issue of purposeful availment, Mr. Richter contends that LG Chem purposefully targeted consumers in Illinois by using its authorized distributors to make sales to Illinois resellers from whom Mr. Richter ultimately purchased the allegedly defective LG batteries. There is, however, no evidence suggesting that LG Chem did anything to target Illinois consumers and therefore fails to satisfy the first "essential requirement" identified by the Seventh Circuit in *Felland*: purposeful availment. In the Seventh Circuit, purposeful availment may be satisfied through a "stream of commerce theory," which "posits that personal jurisdiction may be appropriate over 'a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *J.S.T. Corp.,* 965 F.3d at 575 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980)).[10] The requirement is not satisfied, however, where the item arrives in the forum state through "random, fortuitous, or attenuated contacts" or as a result of "the unilateral activity of another party or a third person." *Burger King Corp.*, 471 U.S. at 475 (internal quotation marks omitted). In other words, for contacts with the forum state to be purposeful, they must "proximately result from actions by the defendant." *Id.*

And on the facts before the Court, this is not a close case. For starters, Mr. Richter has not proven by a preponderance of the evidence that LG Chem sold LG HG2 18650 batteries to ECIG

---

[10] The Seventh Circuit, unlike some other circuits, continues to apply the stream of commerce theory. *See J.S.T. Corp.*, 965 F.3d at 575-76 ("[O]ur circuit is among those that apply the stream of commerce theory in products liability cases. In the absence of intervening guidance from the Supreme Court, we have reasoned that the Court adopted the stream of commerce theory in *World-Wide Volkswagen* and has not overruled it since.").

Fiend or Shenzen IME; indeed, Mr. Oh testified to the contrary: those companies do not appear in the customer database kept by LG Chem. At the hearing, Mr. Richter's only response was to cast doubt on the exhaustiveness of that database by insinuating that an LG Chem sales professional could have deleted these companies from the log or otherwise failed to log them—both actions that would contravene LG Chem policy. *See* Evidentiary Hr'g Tr. 2-3, ECF No. 89. That sort of speculation cannot replace evidence. Similarly, Mr. Richter points to Midwest Goods' possession of what appear to be LG Chem forms sent to shipping forwarders; but there are many plausible pathways through which even authentic forms might have reached Midwest Goods that do not implicate LG Chem directly. Without more, the forms do not show that LG Chem engaged in unrecorded sales. The Court finds that LG Chem had no purposeful—and therefore no jurisdictionally relevant—connection to ECIG Fiend or Shenzen IME. It bears noting as well that, even had Mr. Richter established some connection between LG Chem and ECIG Fiend and Shenzen IME, he would also need to establish some basis from which to infer that LG Chem knew that those companies were selling to customers in Illinois. *See*, *e.g.*, *Wilson v. Nouvag GmbH*, No. 15-CV-11700, 2018 WL 1565602, at *4 (N.D. Ill. Mar. 30, 2018) (no purposeful availment found where plaintiff failed to adduce evidence that defendant manufacturer had knowledge of how or where authorized distributor sold the product). Mr. Richter presented no such evidence.

      To be sure, it is possible that ECIG Fiend and Shenzen IME obtained LG Chem's batteries through another source—indeed, that is the logical conclusion to draw since the evidence indicates that they did not obtain the batteries from LG Chem. But if LG Chem played no intentional role in the path the batteries took to Illinois—if they arrived by way of multiple unknown and unauthorized distributors—that is the very definition of "unilateral activity [by] another party or a third person." *Burger King Corp.*, 471 U.S. at 475. In applying the stream of commerce theory,

10

the Seventh Circuit has distinguished between products that arrive in the forum-state by way of the defendant's intended distribution scheme and those that do not. *Compare Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 551 (7th Cir. 2004) ("It is possible that the 'unilateral activity' of a third party, rather than the defendant's distribution scheme, landed the jack in Indiana, which is the very scenario that doomed the plaintiffs' case in *World–Wide Volkswagen*."), *with J.S.T. Corp.*, 2020 WL 3960287, at *3 ("[W]e have found personal jurisdiction in a products liability suit because a defendant sold fireworks to a middleman 'with the knowledge that its fireworks would reach Illinois consumers in the stream of commerce.'" (quoting *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 946-47 (7th Cir. 1992))). Where, as here, a product reaches a forum state through unplanned and unauthorized backchannels, the defendant cannot be said to have purposefully directed its activities at the forum state.

In reaching this conclusion, the Court need not find that LG Chem was unaware that, contrary to its intentions, some fraction of its products was re-purposed and re-sold for use in e-cigarettes across the United States, including in Illinois. There is no evidence that LG Chem knew where the leaks in its distribution channel occurred or otherwise encouraged them; to the contrary, the evidence shows that LG Chem sought to prevent retail sales of the HG2 batteries. *See* Evidentiary Hr'g Tr. 16-18, ECF No. 89 (describing the restrictions LG Chem imposes). Therefore, from LG Chem's perspective, that its products ended up in e-cigarettes sold in a vaping shop in Algonquin, Illinois was pure chance, attributable to no action of its own. Where there is no purposeful involvement, simply foreseeing that products may travel beyond the intended terminus of the distribution scheme does not infuse otherwise non-forum related conduct with jurisdictional relevance. *Burger King Corp*. 471 U.S. at 474 ("Although it has been argued that foreseeability of causing injury in another State should be sufficient to establish such contacts there

11

when policy considerations so require, the Court has consistently held that this kind of foreseeability is not a 'sufficient benchmark' for exercising personal jurisdiction.") (internal quotation marks omitted). *See also Lexington Ins. Co.*, 938 F.3d at 882 ("Only a defendant's actions can empower a state to exercise jurisdiction over him. Given this principle, the "worldwide coverage" clause cannot justify Wisconsin's—or any other state's—exercise of jurisdiction over Zurich and Taian simply because the clause made suit in that state foreseeable."). In sum, because LG Chem made no "purposeful connection" with Illinois related to the sales of HG2 batteries by ECIG Fiend and Shenzen IME, the Court may not exercise personal jurisdiction on that basis. *Id.*

Perhaps recognizing that he cannot establish purposeful availment based on any connection between LG Chem and the companies that sold the HG2 batteries to Midwest Goods, in his post-hearing brief, Mr. Richter shifts his focus to LG Chem's sales to AllCell Technology and Inventus Power, asserting that those sales demonstrate LG Chem's purposeful targeting of the Illinois market. But there is no evidence whatsoever to support Mr. Richter's contention that in selling to these Illinois manufacturers, LG was directly targeting Illinois consumers like Mr. Richter. LG Chem sold to two Illinois manufacturers who used LG batteries in their products, which were presumably then sold in any number of states and countries. Perhaps those sales included Illinois customers, but that is entirely speculative; there is no evidence of sales by these companies to any Illinois customers, much less to businesses who conduct retail sales to Illinois consumers. Stream of commerce availment occurs "when a defendant takes steps to reach consumers in a forum state" and thereby creates "a relationship with the forum state that has special relevance to the litigation

at issue." *J.S.T. Corp.*, 965 F.3d at 576. That context is missing here.[11] LG Chem's sales to AllCell Technologies and Inventus Power do not support a finding that in selling batteries to these companies, LG Chem was purposefully directing its activities to Illinois consumers. *Cf. Bristol-Myers Squibb Co. v. Superior Court*, ––– U.S. –––, 137 S. Ct. 1773, 1783 (2017) ("The bare fact that [defendant] contracted with a California distributor is not enough to establish personal jurisdiction in the State.").

That brings us to the second flaw in Mr. Richter's argument. Even if the sales to AllCell and Inventus were deemed to satisfy the purposeful availment requirement, this Court would still lack specific personal jurisdiction over LG Chem. To give rise to specific personal jurisdiction, "there must be a causal relationship" between the defendant's contacts with the forum and the alleged injury. *J.S.T. Corp.*, 965 F.3d at 574. But here, there is none. The record indicates that, in 2016 and 2017, LG Chem sold batteries to two Illinois companies, AllCell Technologies and Inventus Power, but nothing—no evidence or even allegation—links those companies or the batteries they purchased to Mr. Richter's injury. There is no evidence that either company further distributed or resold LG Chem batteries to other companies or consumers anywhere, much less in Illinois. The allegations in this case are that the defective battery that Mr. Richter bought came to

---

[11] The absence of efforts to reach Illinois consumers directly distinguishes this case from the California cases cited by Mr. Richter. LG Chem's contacts with California include, *inter alia*, sales to companies and residents, investment in California companies, and ownership and operation of subsidiaries with their principal places of business in California. *See, e.g., Berven v. LG Chem, Ltd.*, 2019 WL 1746083, **3-6 (E.D. Ca. April 18, 2019). Further, and as noted by the Court in *Berven*, it was undisputed in that case that LG Chem conducted "substantial marketing, sales and support for 18650 batteries in California," including sales within the state by authorized distributors. *Id.* at *9. LG's contacts with California dwarf its contacts with Illinois and there is no evidence of comparable marketing, sales and support by LG Chem for 18650 batteries in Illinois.

Illinois not by virtue of LG Chem's sales to AllCell or Inventus, but through sales by two Chinese companies to Midwest Goods, a company with which LG Chem has never had any relationship.

Where, as here, a corporation engages in economic activity in the forum state that is causally unrelated to an alleged injury, that activity is irrelevant to the specific jurisdiction inquiry. *See, e.g., Bristol-Myers Squibb*, 137 S. Ct. at 1781 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales.") (citation omitted); *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014), as corrected (May 12, 2014) ("The only sales that would be relevant are those that were related to Real Action's allegedly unlawful activity. Advanced Tactical—which has the burden of proof here—has not provided evidence of any such sales."). *See also RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997) ("[I]ndividuals and corporations must be able to conduct interstate business confident that transactions in one context will not come back to haunt them unexpectedly in another."). Mr. Richter makes much of the fact that these Illinois sales also involved lithium ion batteries, but that is not the type of relation necessary for suit-related conduct. To constitute suit-related conduct, there must be a causal connection with the claims asserted—without that, it makes no difference if, as here, the sales concerned a similar or identical product. *J.S.T. Corp.*, 2020 WL 3960287, at *1 ("For personal jurisdiction to exist, though, there must be a causal relationship between the competitors' dealings in Illinois and the claims that J.S.T. has asserted against them.").

Here, there plainly is no such causal relationship:[12] Mr. Richter would have been injured even had LG Chem not sold batteries to AllCell Technologies and Inventus Power for use in their products. Mr. Richter has not even alleged, much less proven, that LG Chem's sales to AllCell and Inventus had anything to do with the injury he sustained.[13] In the absence of any connection between LG Chem's sales to AllCell Technologies and Inventus Power and Mr. Richter's injury, those sales cannot be deemed to have arisen from, or to have any relationship to, Mr. Richter's injury. That is why, in *Bristol-Myers Squibb*, the Supreme Court expressly cited the failure of the plaintiffs to adduce "evidence to show how or by whom the Plavix [think "batteries" in the context of this case] they took was distributed to the pharmacies that dispensed it to them" in concluding that there was no basis for California to exercise specific personal jurisdiction over the defendant. 137 S. Ct. at 1783. Absent evidence that the California-based distributor provided the defective product to the plaintiffs, the state courts had no basis to exercise specific personal jurisdiction over non-resident defendants. The same conclusion must follow here, where it is uncontroverted that the plaintiff obtained the allegedly defective products not from contacts LG Chem had with Illinois companies like AllCell and Inventus but from unauthorized distributors in China. There is simply no connection between LG Chem's contacts with Illinois and Mr. Richter's purchase of an e-

---

[12] The Seventh Circuit has observed that the question of whether the causal relationship between a defendant's forum contacts must satisfy a but-for or more stringent proximate cause standard. *Clifton*, 682 F.3d at 676-77. The debate is not material here, as Mr. Richter's claim fails to establish even a but-for relationship with LG Chem's sales to AllCell and Inventus. Here, there is no causal relationship of any degree between those sales and the plaintiff's injury.

[13] It is undisputed that Mr. Richter obtained the batteries in question from No Leap Vapor and that No Leaf Vapor obtained the batteries from Midwest Goods, which obtained them from ECIG Fiend and Shenzen IME. AllCell Technologies and Inventus Power are not part of the distribution chain that plaintiff has alleged.

15

cigarette containing allegedly defective batteries. Accordingly, this Court cannot exercise personal jurisdiction over LG Chem.

\* \* \*

For the reasons stated above, LG Chem's motion to dismiss is granted. This dismissal is without prejudice to the reassertion of Mr. Richter's claim in a court that may properly exercise personal jurisdiction over LG Chem, but in view of the discovery conducted and the evidentiary hearing held, the dismissal is final in this Court. Accordingly, final judgment in favor of LG Chem will be entered.

Dated: October 2, 2020

John J. Tharp, Jr.
United States District Judge